UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AARON ZIEGLER,

     Plaintiff,

v.                                                    Case No. 8:20-cv-3002-KKM-AEP

CHRISTOPHER NOCCO, JEFFERY
HARRINGTON, KEN GREGORY,
JOSEPH IRIZARRY, TAIT SANBORN,
JAY GALASSI, and KEVIN MACUMBER,

     Defendants.

_____/

## ORDER

Plaintiff Aaron Ziegler resigned from the Pasco County Sheriff's Office and now brings constitutional and Racketeer Influenced and Corrupt Organizations Act (RICO) claims against his former supervisors. His efforts to transform his commonplace employment disputes into RICO and constitutional ones are unsuccessful. Instead, Ziegler's amended complaint comprises a shotgun pleading and, even for the identifiable claims, fails to state a claim upon which relief can be granted. As a result, the Court grants Defendants' motion to dismiss (Doc. 18), dismisses Ziegler's amended complaint with prejudice, and directs the clerk to enter judgment in Defendants' favor.

1

## I.      Procedural History

The history of this litigation is both protracted and procedurally painful, yet with little advancement on the merits. On April 16, 2019, Christopher J. Squitieri and two other plaintiffs filed a complaint against fifteen defendants, all of whom were current or former employees of the Pasco County Sheriff's Office ("Squitieri litigation"), alleging a civil RICO and state law claim. *See Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS. A couple months later, an amended complaint was filed in the case; it named twenty plaintiffs— including Ziegler—and forty-five defendants. After receiving leave from the Court (at that time, the case was before the Honorable Charlene Honeywell), the Squitieri litigation plaintiffs filed a second amended complaint on August 7, 2019. Defendants moved to dismiss plaintiffs' second amended complaint less than a week later. During a hearing on defendants' motion to dismiss, Judge Honeywell step-by-step explained the deficiencies remaining in the plaintiffs' pleading and orally granted-in-part defendants' motion to dismiss the second amended complaint and directed plaintiffs to file a third amended complaint that complied with the Federal Rules of Civil Procedure. The Squitieri litigation plaintiffs filed a third amended complaint, which defendants again moved to dismiss.

After entering an order to show cause and considering plaintiffs' response, Judge Honeywell severed the Squitieri litigation claims and ordered plaintiffs to pursue their claims in separate actions against the appropriate defendants by December 16, 2020.

2

Ziegler initiated this action by filing a complaint against Defendants Christopher Nocco, Jeffrey Harrington, Ken Gregory, Joseph Irizarry, Tait Sanborn, Jay Galassi, and Kevin Macumber. (Doc. 1.) Ziegler then filed an amended complaint on February 19, 2021, alleging a civil RICO claim (Count I) and various constitutional violations (Count II). (Doc. 15.) Defendants moved to dismiss the amended complaint as a shotgun pleading and for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.) Ziegler filed a response in opposition to the motion to dismiss (Doc. 22), and the Court stayed discovery pending the resolution of the motion to dismiss (Doc. 23).

## II.    Factual Background

Ziegler's amended complaint recounts several events—without explaining how they are connected to one another—that occurred at the Sheriff's Office during his career. For instance, he "worked as a Field Training Officer (FTO) for approximately six . . . months . . before putting in a transfer so that he could care for his disabled wife with severe back injuries during the day." (Doc. 15 at ¶ 27.) Although he passed the try outs at least four times, Ziegler did not "make the K-9 Unit" because he could not swim. (*Id.* at ¶ 28.) He also recounted an incident in which Defendant Irizarry told Ziegler, after Ziegler questioned him, that their bulletproof vests "can go into fresh water, just not salt water." (*Id.* at ¶ 29.) But when Ziegler emailed the bulletproof vest manufacture, the company

told him that the vest's integrity would be compromised if it got wet at all—whether fresh or salt water. (*Id.* at ¶ 30.) Ziegler advised the other deputies of this information. (*Id.* at ¶ 31.)

Another episode recounted in the amended complaint concerned Ziegler's transfer to night shift. After Ziegler transferred to a different position within the Sheriff's Office, Defendant Macumber called Ziegler to tell him that Defendant Gregory was angry that he left FTO to work night shift and that Defendant Gregory "was going to promote him to Corporal until he found out [that Ziegler] transferred, ultimately causing [Ziegler] to be denied every opportunity at promotion after his transfer." (*Id.* at ¶ 32.) Several defendants instructed two patrol deputies who worked in Ziegler's squad area to "team up against him, forcing him to cover all the calls in their area by himself." (*Id.* at ¶ 33.)

Yet another incident involved his routine to take meal breaks at his home. Ziegler "requested and was granted approval to go home during his meal breaks even though his house had no signal reception for his patrol radio, a fact which was known by all Pasco Sheriff's Office Supervisors." (*Id.* at ¶ 34.) "One day when [Ziegler] was coming off his meal break," he heard over his patrol radio that "units" were in the area responding to a shooting. (*Id.* at ¶ 35.) He immediately called Defendant Medina to "get orders on where he was needed." (*Id.*) Ziegler followed the orders provided by Defendant Medina. (*Id.* at ¶ 36.) Although Defendant Medina never said anything about Ziegler's failure to respond

4

to the shooting, several Defendants "wrote [Ziegler] up for being on lunch break at home" after another deputy made a complaint. (*Id.* at ¶¶ 37–38.) Ziegler was suspended for four days. (*Id.* at ¶ 38.)

Around 2016, Ziegler was diagnosed with Post Traumatic Stress Disorder (PTSD) based on a shooting he was involved in while employed with another Police Department. (*Id.* at ¶ 39.) In June 2018, Ziegler was involved in a deputy related shooting while on duty with the Pasco County Sheriff's Office. (*Id.* at ¶ 40.) Although he requested help for his PTSD, Defendants Gregory, Sanborn, and Galassi denied him any assistance or treatment. (*Id.* at ¶ 41.) Instead, they told Ziegler that he could resign or that he would be fired. (*Id.*) Ziegler alleges that all of the defendants "extorted [him] by forcing him to resign in order to keep his vacation time and sick leave, otherwise he would be fired and the Pasco [County] Sheriff's Office would keep his vacation and sick pay." (*Id.* at ¶ 42.)

In his amended complaint, Ziegler also describes the "Intelligence Led Policing" program that the Sheriff's Office had implemented. Ziegler alleges that the ILP program is unconstitutional, "targets those deemed to be 'prolific offenders,'" and instructs law enforcement "to focus [their] efforts on those criminals who [they] have reason to believe are frequent or prolific offenders." (*Id.* at ¶¶ 21, 23.) "The major problem with the ILP practices," Ziegler alleges, is that they rest on the notion that "[s]peed is critical to success and bureaucratic processes that delay implementation must be overcome"—even if those

"bureaucratic processes" "are the fundamental constitutional considerations of 'probable cause' and the many other constitutional protections that apply to all citizens in a free society." (*Id.* at ¶ 22.) And when Ziegler did not "play[] along" and "enforc[e] the unconstitutional dimensions and components of the ILP Program against innocent citizens of Pasco County," Defendants retaliated against him with the above-described "baseless internal departmental investigation intended to ruin [his] career." (*Id.* at ¶¶ 24, 25.)

## III.   Analysis

### a.  Shotgun Pleading

Defendants first argue that the amended complaint should be dismissed as an impermissible shotgun pleading. (Doc. 18 at 4.) The Court concurs.

#### i.  Legal Standard

A shotgun pleading is any pleading which "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Although shotgun pleadings can take many forms, the Eleventh Circuit has identified four "rough types" or categories of shotgun pleadings. *Id.* at 1321–23. First, the most common type is a complaint that contains "multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321 (footnote

6

omitted). The second type of shotgun pleading is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22 (footnote omitted). "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23 (footnote omitted). "Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* (footnote omitted). "The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (footnote omitted). And they violate the Federal Rules of Civil Procedure, most notably Rules 8 and 10.

### ii. Analysis

Defendants argue that Ziegler's amended complaint commits the venial sin of being "replete with 'conclusory, vague, and immaterial facts obviously not connected to any particular cause of action' and otherwise fails to advise defendants of the claims asserted against them." (Doc. 18 at 5 (citation omitted).) The Court generally agrees, but also finds that the amended complaint makes the mortal mistake of not separating each claim for relief into a different count. Ziegler received notice of these pleading deficiencies once the

amended complaint[1] was filed in the Squitieri litigation in 2019. Indeed, at a hearing on the defendants' motion to dismiss the second amended complaint in the Squitieri litigation, Ziegler's attorney, the same counsel as in the Squitieri litigation and in this case and the signatory of Ziegler's amended complaint here, admitted that the second amended complaint was "poorly drafted." *Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS, (Doc. 171 at 7). In the same hearing, Judge Honeywell opined that "the complaint [was] so poorly drafted" that she could not "even get to the merits of it" and that the amended complaint was "absolutely" a "shotgun pleading"; "there [was] no mistake about it." (*Id.* at 6, 8.) Despite these judicial warnings and multiple motions to dismiss in the Squitieri litigation that highlighted the complaints' shortfalls, the deficiencies remained in Ziegler's three Squitieri litigation complaints and two complaints in this case. Rather than correct the deficiencies, Ziegler persisted in submitting poorly drafted pleadings by copying and pasting numerous paragraphs from previous iterations of the Squitieri litigation complaints and his first complaint in this case into his amended complaint that is now before the Court.

To begin, Ziegler's amended complaint is plagued with immaterial and seemingly irrelevant allegations that do not obviously connect to any particular claim for relief. *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (explaining that a complaint

---

[1] Ziegler joined as a plaintiff in the amended complaint filed in the Squitieri litigation.

was undoubtably a shotgun pleading where it was "rife with immaterial factual allegations"). Count I of the amended complaint (the RICO claim) opens with Ziegler "re-alleg[ing] and re-incorporat[ing]" all of the preceding paragraphs in the complaint (paragraphs 1–43)—including the sections on jurisdiction and venue, the parties, and the general allegations. (Doc. 15 at ¶ 44.) He makes the same mistake in Count II of his complaint (various constitutional violations), "re-alleg[ing] and re-incorporat[ing]" paragraphs 1–43 of the amended complaint—leaving Defendants and the Court to puzzle over which allegations connect to which element of the RICO claim. (*Id.* at ¶ 48.)

Attempting to construe which allegations connect to each claim proves an especially difficult task here where Ziegler includes many allegations that do not obviously relate to any claim in the amended complaint. For example, Ziegler alleges—without explanation of its relevance or consequence—that he was denied a spot in the K-9 Unit because he could not swim. (*Id.* at ¶ 28.) Additionally, the Court cannot discern the relevance of Ziegler's account of his bulletproof vest's water tolerance, saltwater or otherwise. (*See id.* at ¶¶ 29–31.) And, although he was suspended for four days, the consequence of Ziegler's suspension for failing to respond to a shooting is also unclear. (*See id.* at ¶¶ 35–38.) Was this suspension the result of a "baseless internal department investigation"? (*Id.* ¶ 25). Or, did this suspension prompt the "fraudulent and retaliatory Internal Affairs Complaints"? (*Id.* ¶ 45). It is all quite inscrutable. But, perhaps most unclear, is Ziegler's vague allegation

9

that certain Defendants "denied him any assistance or treatment" with his PTSD and that this prompted the ultimatum that Ziegler could either resign or be fired. (*Id.* at ¶ 41.) Defendants agree, arguing that "[i]t is unclear what Ziegler claims to be the reason for his alleged concerted resignation given the scattershot nature of his . . . allegations." (Doc. 18 at 7.) To be sure, neither the amended complaint nor Ziegler's briefing explains how these allegations are relevant to or support his alleged claims.

In short, many allegations in Ziegler's amended complaint appear to be immaterial or irrelevant to his claims, leaving Defendants to speculate about the grounds on which Ziegler's claims rest. *See Weiland*, 792 F.3d at 1323 ("The unifying characteristic of all types of shotgun pleadings is that they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."). And Ziegler's opposition to Defendants' motion to dismiss (Doc. 22) fails to provide the much-needed explanation and clarity, leaving the Court and Defendants unsure of which allegations are intended to support which claims for relief. *See Weiland*, 792 F.3d at 1325.

Additionally, Ziegler's amended complaint is fraught with vague and conclusory allegations. *See Barmapov*, 986 F.3d at 1325 (explaining that a complaint was undoubtably a shotgun pleading where it included "numerous vague and conclusory allegations"). For example, Ziegler alleges that Defendants "combined fraudulent and retaliatory Internal Affairs Complaints with the threat of losing every benefit worked for, earned, and owed to

[Ziegler] in order to intimidate and extort [Ziegler] into resigning." (Doc. 15 at ¶ 45.) And, without explaining how, Ziegler alleges that Defendants conspired to engage in theft or embezzlement from an employee benefit plan. (*Id.* at ¶ 46.) Without explanation or factual allegations for support, such vague and conclusory statements are insufficient to meet the pleading requirements of Rule 8(a)(2). *See Barmapov*, 986 F.3d at 1322, 1324–26.

Further, Count II improperly lumps together a variety of constitutional violations. (*See* Doc. 15 at ¶¶ 48–53.) Ziegler alleges that "Defendants, in their official capacities, punished [Ziegler] for exercising his First Amendment rights," (*id.* at ¶ 50); that Defendant Nocco took "a valuable property right protected by the Constitution" away from Ziegler (his job), (*id.* at ¶ 51); that Defendants "denied [Ziegler] equal protection of the law," (*id.* at ¶ 52); and that Defendants' conduct "constitutes an unlawful and unauthorized taking of [Ziegler's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment," (*id.*). In the six paragraphs that comprise Count II, Ziegler appears to allege violations of his First, Fifth, and Fourteenth Amendment rights. (*See id.* at ¶¶ 48–53.) Of course, his earlier allegation in the amended complaint listed "the Fourth, Fifth, and Fourteenth Amendment[s]." (*See id.* at ¶ 2 (without mentioning the First Amendment).) "[W]here a plaintiff asserts multiple claims for relief, a properly drafted

pleading 'will present each claim for relief in a separate count.'" *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 907 (11th Cir. 2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). The failure to separate each claim for relief into a different count, as required by Rule 10(b), is a hallmark of a shotgun pleading and makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson*, 77 F.3d at 366; *see Barmapov*, 986 F.3d at 1325. Accordingly, the Court dismisses Ziegler's amended complaint as an impermissible shotgun pleading.

### b. Failure to State a Claim under Rule 12(b)(6)

In the alternative, Defendants argue that Ziegler's claims—the civil RICO claim and constitutional claims—fail to state a claim upon which relief may be granted. (Doc. 18 at 8–21.) Again, the Court agrees.

### i. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### ii.   RICO Claim

#### 1.   Legal Standard

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of the Act's criminal prohibitions. § 1964(c); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008). To state a prima facie civil RICO claim under § 1964(c), a plaintiff must establish "three essential elements: first, that the defendant[s] committed a pattern of RICO predicate acts under 18 U.S.C. § 1962; second, that the plaintiff suffered injury to business or property; and, finally, that the defendant[s'] racketeering activity proximately caused the injury." *Simpson*

13

*v. Sanderson Farms, Inc.*, 744 F.3d 702, 705 (11th Cir. 2014) (citations and punctuation omitted). Failing to adequately plead any one of these elements warrants dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Because Ziegler failed to plead factual allegations to establish the requisite predicate acts of racketeering activity or a pattern of racketeering activity, the Court dismisses Ziegler's amended complaint for failing to state a claim.

### 2. Analysis

#### a. Ziegler fails to plead any predicate acts under 18 U.S.C. § 1961(1).

An act of racketeering activity, commonly known as a "predicate act," is statutorily defined and includes a long list of state and federal crimes. *See* 18 U.S.C. § 1961(1). Ziegler alleges that Defendants have "engaged in a pattern and practice, through the Pasco [County] Sheriff's Office, of engaging in 'racketeering activity'" through the following predicate acts[2]: (1) extortion as defined by state law under § 1961(1)(A) and (2) theft or embezzlement from an employee benefit plan in violation of § 664 and section 836.05,

---

[2] In the first paragraph of his general allegations, Ziegler alleges that Defendants engaged in racketeering activity through the following predicate acts: (1) retaliating against a witness, victim, or informant under 18 U.S.C. § 1513(e); (2) tampering with a witness, victim, or informant under § 1512(b); and (3) mail and wire fraud under §§ 1341 and 1343, respectively. (Doc. 15 at ¶ 15.) But Ziegler fails to mention these alleged predicate acts anywhere else in his complaint, including his RICO count. In the absence of any additional factual allegations to support these alleged predicate acts, Ziegler fails to properly plead them.

Florida Statutes.[3] (Doc. 15 at ¶¶ 15, 45–47.) "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. Ziegler fails to do so and, consequently, fails to sufficiently plead any of these predicate acts for the reasons discussed below.

### i. Ziegler fails to plead predicate acts under 18 U.S.C. § 1961(1)(a).

In his amended complaint, Ziegler alleges that Defendants engaged in the racketeering activity of extortion under 18 U.S.C. § 1961(1)(A) by "forcing [Ziegler] to resign in order to keep his vacation time and sick leave, otherwise he would be fired and the Pasco [County] Sheriff's Office would keep his vacation and sick pay." (Doc. 15 at

---

[3] Ziegler also alleges that Defendants violated Florida's RICO statute. But in pleading his state law claim, Ziegler only cites to section 895.02(8)(b), Florida Statutes—the Florida *criminal* RICO statute. Not only is this state law claim insufficiently pleaded, section 895.05(6) limits the relief available for a private person to injunctive relief. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1302 n.18 (11th Cir. 1998) (explaining that section 895.05(6) of the Florida criminal RICO statute "allows a private plaintiff to bring a civil suit for equitable relief only"). Because Ziegler is no longer an employee of the Pasco County Sheriff's Office and has alleged no threat of future injury, he lacks standing to seek injunctive relief under Florida law. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364 (2011) (noting that plaintiffs who were former employees no longer employed by the defendant "lack[ed] standing to seek injunctive or declaratory relief against its employment practices"); *Drayton v. W. Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at *4 (11th Cir. Mar. 11, 2002) ("[T]his Court has held that former employees who submit no fact that they will be discriminated against in the future lack standing to seek an injunction." (alteration in original) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997))). Although Ziegler argues in his response to Defendants' motion to dismiss that "[t]he injunctive relief requested under [Florida law] is the correction of the false Internal Affairs reports that continue to damage [Ziegler] by damaging his reputation and ability to find a job in law enforcement" and that he does not seek an injunction based on "employment practices" (Doc. 22 at 4), this argument fails. Ziegler does not mention injunctive relief anywhere in his amended complaint (*see* Doc. 15), much less allege facts sufficient to plead the elements entitling him to such relief. Further, neither his amended complaint (*see* Doc. 15) nor his response (*see* Doc. 22) contain allegations explaining how an injunction could provide the relief he seeks (correcting an internal affairs report) or explaining how this relief is connected to any racketeering activity, as required under Florida's criminal RICO statute.

15

¶¶ 42, 45.) Defendants respond that Ziegler's amended complaint "is devoid of any allegations which would meet the required elements of an extortion claim." (Doc. 18 at 14.) The Court agrees.

Section 1961(1)(A) defines "racketeering" activity as "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year . . . ." § 1961(1)(A). Section 836.05, Florida Statutes, criminalizes extortion, stating that whoever "maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, shall be guilty of a" second-degree felony. Florida's "extortion statute prohibits only those utterances or communications which constitute malicious threats to do injury to another's person, reputation, or property." *Carricarte v. State*, 384 So. 2d 1261, 1263 (Fla. 1980). And "the threats must be made with the intent to extort money or the intent to compel another to act or refrain from acting against his will." *Id.*

Ziegler's statement that Defendants engaged in extortion by "forcing him to resign," (Doc. 15 at ¶ 42), is conclusory. Ziegler does not allege any facts that would make it

16

plausible that Defendants threatened him, including what "utterances or communications" constituted the alleged threat, how the threat was malicious. Nor does he explain in his response to the motion to dismiss how an employer denying an employee assistance or treatment for PTSD leads to an ultimatum (resign or be fired) that constitutes extortion. Without any supporting factual allegations, Ziegler's amended complaint falls short of putting "forward enough facts . . . to make [the extortion claim] independently indictable as a crime," *Cisneros*, 972 F.3d at 1215, meaning it is insufficient to state a predicate act, *see Ashcroft*, 556 U.S. at 678.

### ii.  Ziegler fails to plead predicate acts under 18 U.S.C. § 664.

In his amended complaint, Ziegler alleges that Defendants "conspired to violate 18 U.S.C. § 664. – Theft or embezzlement from [an] employee benefit plan." (Doc. 15 at ¶ 46.) Section 664 provides that: "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this title, or imprisoned not more than five years, or both." Put simply, Ziegler's amended complaint does not contain any allegations to support this predicate act. (*See generally* Doc. 15.) Although Ziegler argues that Defendants forced him to resign "in

order to keep his vacation time and sick leave," this single conclusory allegation falls woefully short of sufficiently stating a claim under Section 664. (*Id.* at ¶ 42.)

### b. Ziegler fails to sufficiently allege that Defendants committed a pattern of racketeering activity.

Essential to any RICO claim is the basic requirement of establishing a pattern of racketeering activity. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "To successfully allege a pattern of racketeering activity, [a] plaintiff[] must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Id.* at 1264. To prove "a 'pattern of racketeering activity' it is not sufficient to simply establish two isolated predicate acts." *Id.* "RICO targets *ongoing* criminal activity, rather than sporadic, isolated criminal acts . . . ." *Id.*

Even if Ziegler had adequately pleaded any predicate acts (he hasn't), he fails to establish that his predicate acts constitute a pattern of racketeering activity.[4] Indeed, the Court cannot identify two alleged instances of any criminal activity—much less the pattern required by a RICO claim—in Ziegler's amended complaint. Accordingly, Ziegler cannot

---

[4] A generous reading of the response to the motion to dismiss would be that Ziegler alleges that the *implementation* of the ILP program itself constituted the predicate acts making up the pattern. (Doc. 22 at 8–12.)" But Ziegler does not make that allegation in his amended complaint and fails to explain, in both the operative pleading and response in opposition to the motion to dismiss, how the ILP program constitutes racketeering activity under 18 U.S.C. § 1962. None of the predicate acts pleaded in Ziegler's amended complaint relate to the ILP program (or at least the connection is not explained); they all relate to Ziegler's allegedly falsified internal affairs complaint and extorted resignation. (*See generally* Doc. 15.) And considering that Ziegler does not clearly point to any individual predicate acts—whether related to the ILP program or not—he cannot show a pattern of racketeering activity.

establish the "pattern of racketeering activity" element for his civil RICO claim. *See Jackson*, 372 F.3d at 1264.

### 3. RICO Claim Conclusion

Because Ziegler fails to adequately allege the existence of any predicate acts or a pattern of racketeering activity and because the failure to plead any one of these elements is fatal to a RICO claim, his civil RICO claim fails.

### iii. Count II: Constitutional Violations

A generous reading of the amended complaint reveals allegations of violations of Ziegler constitutional rights under the First, Fifth, and Fourteenth Amendments.[5] (Doc. 15 at ¶¶ 48–53.) But because Ziegler does not sufficiently state a claim upon which relief can be given, his constitutional claims fail. Specifically, as Defendants argue, "Ziegler's Amended Complaint fails to allege how his constitutional rights were infringed/implicated by Defendants' alleged conduct." (Doc. 18 at 20.)

---

[5] At the beginning of his amended complaint, Ziegler explains that this action arises under the "Fourth, Fifth, and Fourteenth Amendment[s] to the United States Constitution" and in Count II, he mentions the First and Fifth Amendments. (Doc. 15 at ¶¶ 2, 50, 52). The Fourth Amendment bears no relationship to any factual allegation in the amended complaint, so the Court assumes it was an error. As for the Fifth and Fourteenth Amendment claims, Ziegler provides only conclusory statements and wholly fails to support his conclusions with factual allegations. In the penultimate paragraph of Count II of his amended complaint, Ziegler states that Defendants, in their official capacities, "denie[d Ziegler] equal protection of the law in that the Defendants' conduct was arbitrary, oppressive and capricious and unreasonably required [Ziegler] to submit to controls not imposed on other similarly situated Sheriff's Deputies" and "constitute[d] an unlawful and unauthorized taking of [Ziegler's] job via forced resignation, his 'private property,' without just compensation, without due process of law, and without a public purpose, in violation of the [Fifth] Amendment." (Doc. 15 at ¶ 52.) Ziegler never includes any other allegations relating to these constitutional claims. And "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679.

As for the First Amendment claim, Ziegler alleges that "Defendants, in their official capacities, punished [Ziegler] for exercising his First Amendment rights." (Doc. 15 at ¶ 50.) Although Ziegler's amended complaint includes several legal conclusions—e.g., that Defendants "abridged and restrained [Ziegler's] rights to free speech" and the violation of Ziegler's First Amendment rights "constitutes an impermissible 'chilling effect' on constitutionally protected speech and expression," (*id.* at ¶ 52)—it does not include factual allegations to support his claim. For example, the amended complaint does not identify the speech that the Defendants allegedly "abridged and restrained." His communication to other deputies about the bulletproof vests? His request for help regarding his PTSD? The amended complaint leaves the Court and Defendants guessing. In his response to Defendants' motion to dismiss, he argues that "he exercised his right to free speech by speaking up against the will of Defendants in order to ensure their safety, as they had been given improper instructions about the care of their bulletproof vests that could prove to be fatal." (Doc. 22 at 13.) But he does not actually describe his speech in relation to any particular misconduct, establish that he was speaking as a private citizen on a matter of public concern instead of as a government employee, or explain how this unidentified speech was connected to Defendants' allegedly retaliatory action. *See Lamar v. Clayton Cnty. Sch. Dist.*, 605 F. App'x 804, 806–07 (11th Cir. 2015). And, importantly, a response

in opposition to a motion to dismiss does not cure deficiencies in the pleading itself. Ziegler must make those allegations in the operative complaint.

As an overall fatal flaw, the amended complaint lacks any theory of municipal liability. Ziegler brings Count II against Defendants in their official capacities only. (*See* Doc. 15 at ¶¶ 50, 52, 53.) "A suit against a municipal officer in his official capacity is effectively a suit against the government entity that the officer represents." *Lopez v. Gibson*, 770 F. App'x 982, 991 (11th Cir. 2019). Thus, a suit against Defendant Nocco is effectively an action against the governmental entity that Defendant Nocco represents— here, Pasco County. *Id.*; *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). And municipal liability exists only when a "'policy or custom' of the municipality inflicts the injury." *Cook ex rel. Estate of Tessier*, 402 F.3d at 1116; *see Lopez*, 770 F. App'x at 991. An official policy or custom can manifest in several ways. For example, municipal liability may be premised on a single illegal act by a municipal officer—but only "when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter." *Lopez*, 770 F. App'x at 991 (quotation omitted).

Although Ziegler argues that retaliating against employees for exercising their First Amendment rights is "the policy and custom of the Sheriff's Office," (Doc. 22 at 13), Ziegler does not demonstrate how retaliation represents official policy or identify a

municipal officer with final policymaking authority who implemented this policy against him. And Ziegler's statement that the "policy and custom" of the Sheriff's Office was to violate its employees' First Amendment rights is a generalized conclusion that alone cannot establish liability for the Sheriff's Office. Further, this argument is confined to Ziegler's response; the amended complaint is devoid of any such allegations. Accordingly, Ziegler's constitutional claims fail.

## IV.    Conclusion

In her own words, Judge Honeywell "rarely" holds hearings on a motion to dismiss. *Squitieri v. Nocco*, 8:19-cv-0906-KKM-AAS, (Doc. 171 at 8). But she did in the Squitieri litigation because she "felt so strongly about the condition of [the] Second Amended Complaint." *Id.* Needing to "tell [counsel] about [her] concerns with the complaint," she informed counsel in the hearing that he would have "one final opportunity to file a complaint that complies with the rules of civil procedure." *Id.* Ziegler, retaining the same counsel, has now filed two additional complaints since that hearing. In total between the Squitieri litigation and here, Ziegler has filed five complaints. And after quintuple chances, his amended complaint remains deficient and warrants dismissal as a shotgun pleading and for failure to state a claim upon which relief may be granted. Ziegler received more than fair notice of the defects in his complaint, yet rebuffed all warnings to remedy them. Accordingly, the Court dismisses this case with prejudice. *See Vibe Micro, Inc. v.*

*Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018); *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018); *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014).

Accordingly, it is **ORDERED**:

(1)  Defendants' motion to dismiss Ziegler's amended complaint is **GRANTED**. (Doc. 18).

(2) The Court **DISMISSES WITH PREJUDICE** Counts I and II of Ziegler's amended complaint (Doc. 15) and **DISMISSES THIS ACTION**.

(3) The Clerk is directed to enter judgment in favor of Defendants, terminate any pending motions and deadlines, and to close the case.

**ORDERED** in Tampa, Florida, on August 27, 2021.

Kathryn Kimball Mizelle
United States District Judge